UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

DERRICK DOUGLASS,                          :
                                           :
       Petitioner                         :
                                           :
  v.                                       :  CIVIL NO. 3:CV-05-0025
                                           :
FRANKLIN J. TENNIS,                        :  (Judge Kosik)
                                           :
       Respondent                         :

**M E M O R A N D U M**

    Derrick Douglass, an inmate at the State Correctional Institution at Rockview, Pennsylvania, filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 on January 5, 2005. Douglass challenges his 2002 conviction by the York County Court of Common Pleas on two (2) counts of Robbery which resulted in an aggregate sentence of 8½ to 17 years. In the instant petition, he raises four (4) grounds of ineffective assistance of trial counsel.[1] On February 1, 2005, service of the petition was directed on the Respondent Franklin J. Tennis, Superintendent at SCI-Rockview; the Attorney General of Pennsylvania; and the District Attorney of York County. Following the grant of an enlargement of time, a response to the petition and supporting exhibits were thereafter filed on April 26, 2005. (Docs. 13-17.) A traverse and supplement thereto have also been filed by

---

[1] On January 24, 2005, in accordance with United States v. Miller, 197 F.3d 644 (3d Cir. 1999), and Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000), the Court issued an order and notice advising Douglass that he could either have the Court rule on the petition as filed or withdraw it so that he could file one, all inclusive petition within the one-year limit for filing such a petition. (Doc. 3.) On January 31, 2005, Douglass advised the Court that he wished to proceed on his petition as filed. (Doc. 4.)

Douglass.[2]  (Docs. 24, 26.)  The petition is now ripe for consideration.

I.     **Background**

The following facts have been extracted from the Pennsylvania Superior Court's Opinion dated October 23, 2003, affirming the denial of PCRA relief.

> This case involves two robberies which occurred within minutes of each other.  The first victim, Dorothy Kreiner ("Kreiner"), resided in a senior citizen apartment complex.  As Kreiner was getting into the elevator of her building, she was followed by appellant.  He pushed her to the ground and forcibly took her purse which she was hanging around her neck.  He pulled the strap of her purse until it broke and then ran.
>
> Approximately 20 minutes later, Betty Jane Sawmiller ("Sawmiller") walked past appellant as she proceeded down Duke Street carrying a black pocketbook.  As she passed appellant, she said hello and he returned her greeting.  As she walked ahead, she heard someone running behind her; Sawmiller turned and a struggle ensued as appellant grabbed her purse.  Sawmiller yelled out and the people around her called the police.  Sawmiller testified that appellant was in her sight for approximately five minutes.
>
> Lieutenant David J. Arnold was on duty the day of the robberies.  He testified that he was aware of the first robbery and received a transmission concerning the second robbery.  He went to the area where the second robbery was reported and subsequently saw appellant, who fit the description of the assailant.  He called other units to respond to the area and a chase ensued.  Appellant was eventually apprehended in a creek; he was in possession of the black purse taken from Sawmiller.
>
> At the trial, Debra Krebbs, the manager of the apartment building where Kreiner lived, also testified. Krebbs heard screaming and went to see what was going on; she then realized that Kreiner had been robbed.  Krebbs informed the police that she had video camera security in the lobby of the building, and she was going to rewind the tape to see if she could identify the perpetrator.  The police later reviewed the video tape.  The tape depicted appellant entering the vestibule of the building behind Kreiner and subsequently leaving the building.

---

[2]  Douglass also submitted a copy of a police report (Doc. 18) which the Court will consider as part of his traverse in this case.

2

> Appellant took the stand and denied that he was involved in the robberies. He claimed that the police arrested the wrong person and never had an accurate description of the robber. Appellant testified that he was at Kreiner's apartment building because he was visiting a friend who also lived there. He also explained that he was in possession of the purse because he was chasing the man who stole it and this person threw the purse at him. His defense relied heavily on the fact that everyone's description of the assailant differed. He also relied on the fact that the property record of what he had on when he initially arrived at the York County Prison had an item crossed off.
>
> Following a jury trial, appellant was convicted of two counts of robbery. At the October 21, 2002 sentencing hearing, appellant addressed the trial court and requested that his appointed attorney, Heather Z. Reynosa, Esq., be removed as his counsel . Appellant alleged that she failed to represent him effectively. Attorney Reynosa did not object, and noted to the court that appellant would not be able to raise such an issue on direct appeal if new counsel was not appointed. The trial court refused to appoint new counsel for appellant. (Notes of testimony, 10/ 21/02 at 4-5.) Appellant received an aggregate sentence of 8½ to 17 years imprisonment.

(Doc. 28, Pa. Super. Ct. Opinion dated 8/12/04.)[3]

On October 31, 2002, Douglass filed a post-trial motion for removal of trial counsel. A direct appeal was filed to the Pennsylvania Superior Court on November 18, 2002. On November 20, 2002, the trial court deemed the post-trial motion outside of its jurisdiction. On March 12, 2003, Douglass filed a petition for the appointment of new counsel. On April 25, 2003, the Pennsylvania Superior Court denied Douglass' request and directed that he file his brief in support of his direct appeal by May 27, 2003. On May 20, 2003, counsel for Douglass filed another petition for remand for the appointment of new counsel with the Pennsylvania Superior Court. Meanwhile, on June 11, 2003, a different public defender entered an appearance on behalf of Douglass.

---

[3] While Respondent submitted numerous exhibits in support of his response to the habeas petition, including a copy of the Pennsylvania Superior Court's order affirming the denial of PCRA relief by the York County Court of Common Pleas, a copy of the supporting memorandum issued by the Superior Court was not submitted. A copy of the memorandum has since been obtained from the Superior Court and has been docketed in this action. (Doc. 28.)

On June 18, 2003, the Pennsylvania Superior Court issued an order directing the York County Court of Common Pleas to hold a record inquiry to determine how to proceed in light of the fact that Douglass was currently being represented by one public defender while another public defender from the same office was arguing the ineffectiveness of the current public defender who happened to work in the same office.

On July 14, 2003, a hearing was conducted with regard to the counsel issue. At this time, Douglass made clear that he wished to discontinue his direct appeal filed with the Superior Court, and only proceed with a PCRA petition. On July 23, 2003, the Superior Court discontinued Douglass' direct appeal pursuant to a praecipe to discontinue he had previously filed.

Douglass filed a PCRA petition in the York County Court of Common Pleas on September 3, 2003. Following an evidentiary hearing, the PCRA petition was denied on October 23, 2003. This denial of PCRA relief was affirmed by the Pennsylvania Superior Court on August 12, 2004. (Doc. 17, R.R. at 509a.)

On October 4, 2004, a second PCRA petition was filed by Douglass. On October 22, 2004, the petition was dismissed on the basis that it presented no legally valid issues which the first PCRA counsel failed to raise. The instant habeas petition was thereafter filed on January 5, 2005. In the petition, Douglass raises the following ineffective assistance of counsel grounds: (1) failure to file pre-trial motion to suppress victims' identification of defendant during preliminary hearing which was illegally obtained; (2) failure to file pre-trial motion in limine to preclude prosecutor's prejudicial use of surveillance tape and photographs; (3) failure to call material witness Alexander Harris to establish basis of why defendant was in area on day of robbery; and (4) failure to object and request mistrial after prosecutor improperly commented in closing argument on defendant's post-arrest silence.

The Commonwealth concedes exhaustion of the issues presented in the habeas petition. The Court will therefore proceed to the merits of the petition. For the reasons that follow, the petition will be denied.

## II.     Standard of Review

"The Antiterrorism and Effective Death Penalty Act of 1996 modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002). Specifically, when a federal-law issue has been adjudicated on the merits by a state court, the federal court reverses only when the decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). See generally, Moore v. Morton, 255 F.3d 95, 104-05 (3d Cir. 2001). The Court has held that the "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have independent meaning. Williams v. Taylor, 529 U.S. 362, 404-405 (2000). As explicated in Bell, 535 U.S. at 694:

> A federal habeas court may issue the writ under the 'contrary to' clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts . . . . The court may grant relief under the 'unreasonable application' clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case . . . . The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable . . . .

Federal habeas courts do not correct errors in state law. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Smith v. Horn, 120 F.3d 400, 414 L(3d Cir. 1997). This deferential standard of review

5

applies to state court decisions on ineffective assistance of counsel claims. Id. at 694-98.

**III.    Analysis**

The "clearly established federal law" applicable to Douglass' claims of ineffective assistance of counsel is the familiar two-pronged inquiry the United States Supreme Court articulated in Strickland v. Washington, 466 U.S. 668, 688 (1984): (1) was counsel's performance deficient, and (2) did the deficient performance prejudice the defense. Prejudice has been defined as a "showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687. See also Frey v. Fulcomer, 974 F.2d 348, 358 (3d Cir. 1992) ("[A] petitioner must demonstrate a reasonable probability that, but for the unprofessional errors, the result would have been different."). On habeas corpus review, the pertinent inquiry is whether the state court decision is contrary to or an objectively unreasonable application of Supreme Court precedent. Rompilla v. Horn, 355 F.3d 233, 250 (3d Cir. 2004).

Petitioner in this case advances no argument that the Superior Court decision is contrary to extant United States Supreme Court precedent. In this regard, Petitioner does not maintain that the ineffective assistance test applied by the state court is inconsistent with the test established in Strickland and developed in its progeny. Furthermore, there does not appear to be any Supreme Court case that found ineffective assistance under circumstances indistinguishable or even similar to those presented here. Our Court of Appeals has held that "a state court decision that applied the Pennsylvania test did not apply a rule of law that contradicted Strickland and thus was not 'contrary to' established Supreme Court precedent." Rompilla v. Horn, 355 F.3d 233, 250 (3d Cir. 2004), citing, Werts v. Vaughn, 228 F.3d 178, 202-204 (3d Cir. 2000), cert. denied, 532 U.S. 980 (1987). The Pennsylvania Superior Court applied the governing Pennsylvania test in this case, and its decision, therefore, cannot be regarded as "contrary to" Supreme Court rulings.

6

The dispositive question, then, is whether any of the Superior Court's rulings at issue here reflect an unreasonable application of the Strickland test.  To carry his burden on this claim, Petitioner "must demonstrate that 'the state court decision, evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under Strickland.'" Rompilla, 355 F.3d at 250.  Each asserted instance of ineffective assistance will be considered against this standard.

**A. Failure to file a motion to suppress victim's pre-trial identification of defendant**

Petitioner first argues that trial counsel was ineffective in failing to file a suppression motion with regard to one of the victim's identification of him at the preliminary hearing as her assailant because this testimony was illegally obtained.  Specifically, Petitioner argues that the victim initially stated that she could not describe defendant.  He contends that the police officer's Affidavit of Probable Cause provided a description of the clothes the defendant was wearing when the victim could not provide that information, and as such contained deliberate and misleading false information.

In finding that trial counsel was not ineffective in moving to suppress the victim's pre-trial identification on this basis, the state courts relied on the following.  At the evidentiary hearing held by the trial court on Petitioner's PCRA petition, trial counsel explained that her decision to forego suppressing identification testimony was part of her strategy designed to effectuate her client's interest.  The defense theory was that the police did not have the right person and as such, the discrepancies in the testimony regarding identification of defendant supported this theory.  Included in this defense strategy was both the credibility of the victims as to identification of the defendant as well as the misstatements included in the description of defendant by the police.

Further, the state PCRA court rejected Petitioner's argument that the Affidavit of Probable Cause was factually incorrect with regard to identifying information concerning Petitioner.  Merely

7

because the victim could not remember what the defendant was wearing in no way prohibited the police from independently obtaining identifying information regarding the defendant from the video surveillance tape to include in their affidavit.

As to the deficient performance prong, <u>Strickland</u> requires that reviewing courts indulge a "strong presumption" that counsel's tactics and strategy fall "within the wide range of reasonable professional assistance." <u>Strickland</u>, 466 U.S. at 689.  A petitioner must overcome a presumption that counsel's action "might be considered sound trial strategy.'" <u>Id</u>.  The Superior Court's finding that trial counsel's decision to forego suppressing identification testimony had some reasonable basis designed to effectuate Petitioner's interests and reinforce the defense theory of "the wrong person" is faithful to the requisite presumption accorded counsel's actions.  As such, this Court cannot say that the Superior Court's ruling on this issue reflects an unreasonable application of the <u>Strickland</u> test.

### B. **Failure to file motion in limine to preclude use of surveillance tape/photographs**

Petitioner was shown on a surveillance tape/photos at the entry to the first victim's high rise residence and again when he exited the building.  Petitioner argues that these items should not have been admissible, and therefore suppressed by trial counsel, because they do not show him committing a crime.  This argument was rejected by both the PCRA court and the Superior Court of Pennsylvania on appeal on the following basis.  First, not moving to suppress these items supports the defense theory that Petitioner was in fact at that building on the day of the robbery to visit a friend who was not home and as such, he came and left the premises quickly.  As such, counsel's assistance is deemed constitutionally effective as the state courts were able to conclude that the particular course chosen by counsel had some reasonable basis.  Further, merely because the tape/photos do not show Petitioner in the process of actually committing a robbery does not make

8

the tape/photos inadmissible.  In addition, while Petitioner objects to the use of the tape/photos to establish his presence at the building, Petitioner himself through his own testimony at trial told the jury he was at the building on the date in question to visit a friend who turned out not to be home.  Clearly, he can not argue he suffered any harm under these circumstances.  Evaluated objectively, the state court decision did not result in an outcome that cannot reasonably be justified under Strickland.  Where inaction of defense counsel might reasonably be regarded as a sound tactical decision, a finding of ineffective assistance cannot be reached.  Burger v. Kemp, 483 U.S. 776, 794-95 (1987).  The state court's ruling cannot be viewed as an unreasonable application of the Strickland principles or an unreasonable determination of the facts presented.

### C. **Failure to call a material witness**

Petitioner next contends that trial counsel failed to call Alexander Harris as a witness for the defense.  He claims that Harris could have established the basis for why he was in the area of the apartment complex on the day of the robbery.  Petitioner allegedly went to the apartment building where the crime occurred to visit Harris, another tenant there.  However, Harris was not at home.  In addressing this issue, the PCRA court found that during testimony Petitioner had admitted that he was at the apartment complex on the date of the robbery and confirmed that the person on the surveillance tape was him.  He further explained that he was there to see Mr. Harris, but that he was not home.  The PCRA court found that counsel could not be found ineffective for failing to call Harris as a witness in light of the fact that he had no testimony to offer.   Based on the admissions and testimony already given by Petitioner, and the facts that Harris was not home on the date in question and had no contact with Petitioner, the court found that Harris had no testimony to offer.  Further, the PCRA court found counsel credible when she testified at the PCRA evidentiary hearing that Petitioner had actually told a different story - - that he had actually talked to Mr. Harris, but

9

when counsel talked to Harris he had stated that he had not spoken with Petitioner on the date in question. The PCRA court found this to be an acceptable reason for not calling Harris as a witness. The Pennsylvania Superior Court found that trial counsel could not be found ineffective for failing to call Harris as a witness based upon relevant case law. Petitioner had failed to present any affidavit establishing that the proposed witness was available to testify at the time of trial or the substance of his proposed testimony.

Based on the record, it cannot be said that trial counsel's failure to call Harris as a witness was ineffective assistance of counsel under the <u>Strickland</u> principles. Nowhere in the record is it established that Petitioner demonstrated Harris' availability to testify and that Harris had testimony to offer on his behalf. To the contrary, the record supports the state court's finding that the inaction of defense counsel might reasonably be regarded as a sound tactical decision, in light of the discrepancy as to Harris' comment that he had not spoken with Petitioner on the date of the robbery. Further, no prejudice could be said to result by any failure to call Harris as Petitioner himself testified that he had no contact with Harris that day as he was not at home. As such, Harris could offer no testimony beneficial to Petitioner. Petitioner had already established his presence at the apartment building on the date of the robbery there. As such, the state court's ruling cannot be viewed as an unreasonable application of the <u>Strickland</u> principles or an unreasonable determination of the facts presented.

**D. Failure to move for mistrial based on prosecution's comments on post-arrest silence**

Petitioner's final claim for relief is that trial counsel provided ineffective assistance of counsel for failing to object and request a mistrial after the prosecutor improperly commented during his closing argument on Petitioner's silence at the time of his arrest. Specifically, in his appeal to the Superior Court, the challenged remarks were as follows: "Police have got the wrong

10

guy. Well if they did, why didn't he say it at the very beginning? He said nothing when he was down, when he had a chance to make up his story, I am not the guy, I got it off a guy." (Doc. 17, Vol. IV, Appellant's Brief at 481a.) He contends that these comments by the prosecutor are clearly improper and trial counsel was ineffective in failing to object/request a mistrial.

In evaluating Petitioner's claim of prosecutorial misconduct in the form of improper remarks to the jury, the Pennsylvania courts relied on state law holding that such comments must be assessed in the context in which they occurred. Reversible error does not occur unless the effect of such comments would be to prejudice the jurors so that they could not weigh the evidence objectively and render a true verdict. See Commonwealth v. Smith, 490 Pa. 380, 388, 416 A.2d 986, 989 (1980); Commonwealth v. McNeal, 456 Pa. 394, 400, 319 A.2d 669, 673 (1974). This is consistent with United States Supreme Court precedent which establishes that "[t]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." Smith v. Phillips, 455 U.S. 209, 219 (1982). To warrant relief, the prosecutorial misconduct must "so infect [] the trial with unfairness, as to make the resulting conviction a denial of due process." Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974); see also Revels v. Diguglielmo, Civ. A. No. 03-5412, 2004 WL 2009312, at *12 (E.D. Pa. Sept. 9, 2004)(Holding that "[a] petitioner must show that the prosecutor's comments were so egregious that they fatally infected the proceedings, rendered the entire trial fundamentally unfair, and made the conviction a denial of due process.")

United States Supreme Court precedent further establishes that it is improper for a prosecutor to cause a jury to draw an impermissible inference of guilt from a defendant's post-arrest silence. See Doyle v. Ohio, 426 U.S. 610 (1976). The Pennsylvania courts first examined whether counsel's failure to object to the prosecutor's comments was deficient conduct. This inquiry is in

11

accord with the first prong of Strickland in determining ineffective assistance of counsel which requires a finding of deficient conduct. In assessing an ineffective assistance claim, the totality of the evidence before the jury must be considered. See Jermyn v. Horn, 266 F.3d 257, 283 (3d Cir. 2001). As such, the state courts considered the prosecutor's comment within the context of the entire passage of the relevant portion of the closing argument, which follows:

> . . . . Now, he claims he is a hero. He just happened to be along with a number of people who were saying, hey, that guy snatched the purse. He is a hero. And he follows the guy to the creek and he takes the purse and he's just misunderstood. Police have got the wrong guy. Well, if they did, why didn't he say it at the very beginning? He said nothing when he was down, when he had a chance to make up his story, I am not the guy, I got it off a guy. What does he do? He resists. He runs to the officer. North, south, east, west, he's trying to get away. Otherwise, they would not have ended up soaked in the creek.

(Doc. 15, Resp. Exs., Vol. II, T.Tr. at 133-34.) While concluding that Petitioner was correct in his assertion that a prosecutor is precluded from asking a jury to draw an adverse inference from a defendant's post-arrest silence, the Pennsylvania Superior Court found that Petitioner's reliance was misplaced in this particular case. Viewing the prosecutor's comments in the context within which they occurred, it was clear that he was not commenting on the post-arrest silence, but rather, the comments were being used to explain Petitioner's actions as opposed to his silence. The prosecutor was referring to excited utterances at the time of Petitioner's apprehension and his story with regard to how he ended up with the purse. The comments were used to set forth Petitioner's actions as they occurred during the incident which demonstrated a person who was showing guilt as opposed to either giving in to police or acting as a person who just recovered a purse from a snatcher and was approaching police. Further, the state court referenced the fact that the record revealed that the jury was informed that Petitioner was not silent following his arrest in that he stated he was present

at the scene, but was not the assailant and that he was trying to pursue the robber when he was captured by the police in the creek.

      The Superior Court's finding that trial counsel's failure to object/move for a mistrial was not deficient was not unreasonable in light of the record in this case.  While the comments referred to by Petitioner taken in isolation may alone raise questions, read in total context, it is not unreasonable to conclude that the closing remarks were permissible comments regarding his actions, not on his silence.  Consequently, Petitioner has not demonstrated that the state court's rejection of his ineffective assistance claim reflected an unreasonable application of federal law.  Accordingly, the petition for writ of habeas corpus will be denied.  An appropriate Order follows.

UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

DERRICK DOUGLASS,                          :
                                           :
      Petitioner                           :
                                           :
    v.                                   :    CIVIL NO. 3:CV-05-0025
                                           :
FRANKLIN J. TENNIS,                        :    (Judge Kosik)
                                           :
      Respondent                           :

**O R D E R**

      **NOW, THIS 21st DAY OF APRIL, 2006,** for the reasons set forth in the foregoing Memorandum, **IT IS HEREBY ORDERED THAT:**

    1.    The petition for writ of habeas corpus is **DENIED**.

    2.    The Clerk of Court is directed to close this case.

    3.    There is no basis for the issuance of a certificate of appealability.

                                  s/Edwin M. Kosik
                                  United States District Judge